**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JOSEPH WAYNE HUGHART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-48-DES** |
| | ) | |
| **MARTIN O'MALLEY,** [1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Joseph Wayne Hughart ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court REVERSES and REMANDS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim.   20 C.F.R. § 404.1520(a)(4).   This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors.   20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five.   *Lax v. Astrue,* 489 F.3d 1080, 1084.   If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g).   The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence.   *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020).   Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).   In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency."   *Noreja,* 952 F.3d at 1178 (quotation omitted).   Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.    Claimant's Background and Procedural History

In October 2019, Claimant applied for disability insurance benefits under Title II of the Act.  (R. 17, 187-88).  Claimant alleges he has been unable to work since an amended onset date of September 13, 2018, due to arthritis in his feet, gall bladder problems, arthritis and limited range of motion in his shoulders, pain and limited range of motion in his left knee, high blood pressure, back problems, and irritable bowel syndrome.  (R. 37, 187, 254).  Claimant was 50 years old on the date of the ALJ's decision.  (R. 24, 187).  He completed two years of college and has past work as a warden, police officer, and chief of police.  (R. 23, 53, 255).

Claimant's claim for benefits was denied initially and on reconsideration, and he requested a hearing.  (R. 62-84, 120-21).  ALJ Carol Lynn Latham conducted an administrative hearing and issued a decision on May 10, 2021, finding Claimant not disabled.  (R. 14-24, 31-59).  The Appeals Council denied review on December 20, 2021 (R. 3-8), rendering the Commissioner's decision final.  20 C.F.R. § 404.981.  Claimant filed this appeal on February 10, 2022.  (Docket No. 2).

## III.    The ALJ's Decision

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since his amended alleged onset date of September 18, 2018.[2] (R. 19).  At step two, the ALJ found Claimant had the severe impairments of residual effects of left shoulder SLAP (torn glenoid labrum in the shoulder joint) post-surgery; residual effects of meniscal tear in the left knee post-surgery; and mild rotator cuff tendonitis, low-grade partial rotator cuff tear, and mild arthritic

---

[2] In her decision, the ALJ indicates Claimant, through counsel, amended his onset date to September 18, 2018 (R. 17); however, Claimant's counsel indicated at the administrative hearing that he would like to amend the onset date to September 13, 2018 (R. 37).

changes to the glenoid humeral joint in the right shoulder with residual effects from surgery. (R. 19-20). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following non-exertional limitations:

> "[N]o more than frequent climbing of ramps or stairs; no more than occasional climbing of ladders, ropes or scaffolds; no more than frequent kneeling or crouching; no more than occasional crawling; and no more than occasional overhead reaching bilaterally.

(R. 20-21). The ALJ provided a summary of the evidence that went into this finding. (R. 21-23).

Based on the testimony of a vocational expert ("VE") as per the Dictionary of Occupational Titles ("DOT"), the ALJ concluded at step four that Claimant could return to his past relevant work as a warden and chief of police as generally performed in the national economy. (R. 23). Accordingly, the ALJ concluded Claimant was not disabled. (R. 24).

## IV.     Issues Presented

Claimant asserts the ALJ erred by: (1) failing to consider and account for Claimant's hemorrhoids in the RFC, (2) finding him capable of returning to his past composite work as a warden and chief of police as generally performed, and (3) failing to resolve a conflict between the VE's testimony and the DOT regarding the exertional requirements of Claimant's past relevant work as a warden and chief of police. The Court agrees the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding the exertional requirements of Claimant's past relevant work.

V.      **Analysis**

At step four of the sequential analysis, the ALJ considers the claimant's RFC and assesses

his ability to return to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv). The ALJ is required to

make specific findings in three phases at this step.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th

Cir. 1996).  In phase one, the ALJ evaluates the claimant's mental and physical RFC.  *Id.*  In phase

two, the ALJ examines the demands of the claimant's past relevant work.  *Id.*  Finally, in phase

three, the ALJ ascertains "whether the claimant has the ability to meet the job demands found in

phase two despite the [RFC] limitations found in phase one."  *Id.*  (citing Social Security Ruling

("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). The claimant has the burden at step four to

show he is unable to perform his past relevant work "*both* as [he] actually performed that work in

the past *and* as it is generally performed in the national economy." *Adams v. Colvin*, 616 F. App'x

393, 394 (10th Cir. 2015) (unpublished).  If past relevant work remains possible, the analysis stops

with a finding of not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).

In this case, the ALJ determined that Claimant's past relevant work as a warden and a chief

of police was sedentary "according to classifications found in the [DOT]."  (R. 23).  Claimant

argues this determination is not supported by substantial evidence.  Specifically, Plaintiff points to

an inconsistency between the DOT classification for his past relevant work as a warden and a chief

of police and the VE's testimony regarding the exertional level of such jobs as generally performed

in the national economy and asserts the ALJ failed to explain how she reconciled these conflicting

classifications when evaluating Claimant's ability to perform his past relevant work at step four.

(Docket No. 12 at 6-10).  The Court agrees.

The Court finds there is unambiguously a conflict in the record between the VE's testimony

and the DOT regarding the exertional requirements of the warden and chief of police jobs.  As set

6:22-cv-00048-DES   Document 20   Filed in ED/OK on 03/21/24   Page 6 of 10

forth above, Claimant's past relevant work as a warden and as a chief of police is classified as sedentary in the DOT. *See* DOT § 187.117-018, 1991 WL 671347 (4th ed. 1991) (warden); DOT § 375.117-010, 1991 WL 673118 (4th ed. 1991) (police chief).   When asked to summarize Claimant's past jobs, as outlined in the DOT and as actually performed, the VE testified as follows:

> A  "He was a warden, it's sedentary . . . . He was a police officer, medium . . . . And he was a chief of police, sedentary . . . .   The job as a police officer as actually performed and as described in the DOT . . . are accurate.  I take exception to the warden job, it being sedentary.  I think it's closer to medium because when a prisoner goes out of control . . . it doesn't matter whether you're the warden or anyone else, in the vicinity to get that prisoner back under control. It's not a sedentary position . . . . I think the same thing holds true for the chief of police.
>
> Q  Well, is it your position that the chief of police is closer to the medium level as well?
>
> A  I do.

(R. 53-54).  The VE later affirmed this testimony by stating:

> A  There's no way in god's earth that a warden is going to be sedentary.  At light at the very best.  Because he's always walking around.

(R. 58).  Because the VE referred to Claimant's past work in a general sense, it is clear to the Court that the VE testified the jobs as generally performed in the national economy were performed at a higher exertional level than indicated in the DOT.

The ALJ posed a hypothetical question to the VE matching the RFC set forth above, and the VE testified that a hypothetical person with Claimant's age, education, and work history could perform the jobs of warden and chief of police "as defined in the DOT" but not "as actually performed." (R. 54).  Based on this testimony, the ALJ concluded Claimant could return to his past relevant work as a warden and chief of police as generally performed in the national economy. (R. 23).

The Court agrees the ALJ failed to reconcile critical discrepancies between the DOT and the VE's testimony, thus the ALJ's determination is not supported by substantial evidence.  The

Commissioner correctly points out that the "ALJ may rely on the [DOT's] job description for claimant's job category as presumptively applicable to a claimant's prior work." (Docket No. 16 at 12) (quoting *Andrade v. Sec'y of Health and Hum. Servs.,* 985 F.2d 1045, 1051 (10th Cir. 1993). Nonetheless, "a claimant may overcome the presumption that the [DOT's] entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Andrade,* 985 F.2d at 1051. The VE's testimony that the warden and police chief jobs are "not sedentary," but rather "closer to medium" meets this burden.

Notably, the DOT is not vested with the force of a presumption, but rather is merely evidence on an equal footing with the VE's opinion when there is a conflict. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."). The regulations also plainly state that a VE is permitted to testify regarding the physical demands of a claimant's past relevant work as generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b)(2) ("A [VE] . . . may offer relevant evidence within his or her expertise or knowledge concerning the physical or mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."). Thus, the DOT and the VE's testimony are competent evidence and the Court must decide whether the ALJ resolved the conflict between them in a manner that comports with applicable law. *Richardson v. Perales,* 402 U.S. 389, 399 (1971) (trier of fact has the duty to resolve conflicting evidence); *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) (same).

The ALJ's duty to develop the record includes questioning the VE about the source of his opinions and any deviations from publications such as the DOT. *Haddock v. Apfel*, 196 F.3d 1084,

1091 (10th Cir. 1999). As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."). However, SSR 00-4p focuses on circumstances where an ALJ adopts a VE's testimony over the DOT; it is silent as to the circumstances present in this case, where the ALJ relied on the DOT over a directly contrary VE opinion.   Nonetheless, when considered in conjunction with SSR 82-62, as well as with the relevant regulations, SSR-004p does not mean that an ALJ can ignore a conflict between the DOT and the opinion of a qualified VE, fail to explore the reasons for the conflict, and then rely on the DOT without explanation.

In this case, the ALJ seemed to recognize there was a conflict, but failed to recognize what the conflict was.  For example, when the ALJ asked the VE if his testimony was consistent with the DOT, the VE replied, "Yes . . . with the exception of my discussion about . . . as jobs are actually performed . . . and the way they were defined in the DOT."  Then, in an effort to resolve such conflict, the ALJ stated in her decision that the VE's testimony was consistent with the DOT "except as to . . . the characterization of the above jobs as actually performed . . . . This part is based upon the [VE's] education, training and professional experience working in the vocational field."  (R. 23).  The ALJ then concluded that Claimant was able to perform the jobs of warden and chief of police "as generally performed according to the [DOT], despite the [VE's] testimony that those jobs as actually performed *by the claimant* were closer to the medium exertional level." (emphasis added).  Missing from the ALJ's decision is both an understanding that the VE was

8

referring to a conflict between the DOT and the way that the jobs were *generally* performed, not as actually performed by the claimant, as well as a discussion regarding how she reached the decision to credit the DOT over the VE's opinion that the warden and chief of police jobs are generally performed closer to the medium level. This lack of explanation is contrary to the mandate that a decision regarding a claimant's "[p]ast [r]elevant [o]ccupation" must clearly explain "how specific evidence leads to a conclusion" and must "reconcile any significant inconsistencies." SSR 82-62, at *3-4. Thus, although the ALJ is "entitled to resolve any evidentiary conflicts in the record," *Haga,* 482 F.3d at 1208, the ALJ's failure to explain why she disregarded the VE's hearing testimony regarding the exertional level of Claimant's past relevant work a generally performed and instead relied on the DOT constitutes error.

In sum, the Court finds that the ALJ erred in determining Claimant could return to his past work as a warden and chief of police because she failed to properly consider the testimony of a qualified VE that, as generally performed, such jobs can only be performed by an individual who is capable of medium work. The ALJ failed to recognize such conflict existed and failed include the mandatory written rationale that reconciles "any significant inconsistencies." SSR 82-62, at *4. Accordingly, the ALJ's step four determination that Claimant could return to his past relevant work as a warden and chief of police as generally performed in the national economy is not supported by substantial evidence.

## VI.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED this 21st day of March, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE